MICHAEL A. SCATUORCHIO, INCORPORATED, PLAINTIFF-RESPONDENT, v. NEW YORK, SUSQUEHANNA AND WESTERN RAILROAD COMPANY, DEFENDANT-APPELLANT, AND ERIE RAILROAD COMPANY, DEFENDANT.

Submitted January term, 1932—Decided April 9, 1932.

Before Justices Campbell, Lloyd and Bodine.

For the respondent, *Ralph P. Messano.*

For the appellant, *Edward A. Markley.*

Per Curiam.

That is an appeal from a judgment for damages to a truck of the plaintiff below resulting from a collision with it by a train of the defendant at a place called Lundy's lane.

The state of demand alleges that Lundy's lane is a public highway; that plaintiff's truck was being driven along such highway and across the tracks of the defendant company and became stalled on the crossing and the train of the defendant company carelessly, recklessly and negligently propelled, collided with such truck; that the negligence of the defendant company consisted in failure to have a watchman or safety gates at the crossing; permitting trains to run over such highway at an excessive rate of speed; that the crossing was out of repair, unsafe and unsound in that the roadway be-

tween the rails had been allowed to become depressed; that the company failed to use due care to keep sound and safe planks or other safeguards between and along its rails and tracks; that it did not give the statutory signal; that its engine was equipped with improper brakes; that it failed to maintain its engine and train under proper and safe control and that it failed to exercise suitable and proper diligence to ascertain and observe the presence of other vehicles in its path.

The plaintiff below had a verdict in its favor against the defendant, New York, Susquehanna and Western Railroad Company, a verdict in favor of the Erie Railroad Company, the other defendant, having been directed by consent.

From the judgment entered against the New York, Susquehanna and Western Railroad Company, it appeals, urging four grounds for reversal.

1. That the trial court erred in refusing to direct a verdict in favor of the appellant.

This motion appears to have been made upon the grounds that there was no proof that Lundy's lane was a public highway and no proof that the plantiff had any right to cross the tracks of the appellant.

The motion appears to have been denied by the trial judge because, as he said, "you seem to be in this situation, where the defendant had created or permitted a condition to be created which gave the appearance of a highway" and upon this theory and this alone the matter was submitted to the jury.

The case is barren of any proof that Lundy's lane was a public highway.

Certain maps and tax records were produced and admitted in evidence, some over objection of the appellant, and are the basis of points 2 and 3. These were evidently offered and accepted in evidence for the purpose of establishing that Lundy's lane was a public road, but, in our opinion they did not. They were not the result of any acts of the appellant nor indicative of anything by or for which it was bound. *Exhibit P-1* is an assessment map of Jersey City made by

L. D. Fowler in 1894, which is said to "show Lundy's lane on both sides of the railroad tracks." The map is not made a part of the state of case, but assuming the foregoing to be correct, we are at a loss to know how this can be binding upon the appellant. *Exhibits P-2* and *P-3* are portions of a later assessment map of Jersey City said to be based upon the original map, *Exhibit P-1*. This map is not printed in the state of case but conceding and assuming that it shows Lundy's lane the same as it is said to be shown by *Exhibit P-1*, we are again at a loss to know how such a map prepared and used for the purpose of convenience of Jersey City in assessing lands for taxes can in anywise bind the appellant by anything shown thereon.

*Exhibit P-4* is a map of property of Robert Lundy made in 1870 and purports to be a copy of a map filed in the office of the register of Hudson county September, 1908, and was produced from the files in the office of the department of revenue and finance of Jersey City. It shows a tract of land lying on both sides of the appellant's railroad, laid out in lots, blocks and streets, showing Lundy's lane on both sides of the railroad and entering both from the east and west another street indicated as Railroad avenue, running longitudinally with the railroad and on both sides thereof, being forty feet wide on the west side and thirty-three feet wide on the east side. It is significant that this map shows one line of tracks of the appellant, railroad company, to the east of a broken line. The tracks are shown as six feet in width and the distance from the westerly rail to the dotted line as twenty-one feet, making a total of twenty-seven feet. This, with the indicated widths of the avenues of forty feet and thirty-three feet, on the west and east, seems to coincide with the indicated widths of one hundred feet and one hundred and sixty-seven one-hundredths feet, over all, of Railroad avenue from property line to property line, including the railroad right of way.

Here again we find nothing but the rankest conjecture and speculation to establish the proposition that Lundy's lane was then, or ever, a public highway across the right of way of

the railroad company. In fact the very things just referred to and shown upon this map would positively negative any such inference.

*Exhibit P-6* is certain pages of the field book of the tax clerk of Jersey City showing lands on both sides of the railroad, and said to front on Lundy's lane as having been assessed for taxes by Jersey City.

This adds nothing to the other proofs just referred to in establishing the lane as a public highway.

But it is urged, by the respondent, that Lundy's lane is a public highway by prescription. This occurs through open, adverse, notorious, continuous and uninterrupted use by the public generally for a period of at least twenty years. Was there anything approaching this established by the proofs? We are totally unable to find it.

The entire proof upon this point is that the respondent had, for ten years, used this place of crossing to convey garbage trucks to the dump lying to the west of the railroad tracks and that a property owner and others owning lands fronting on the lane had used this place of crossing for a like period of ten years.

As before stated we find no proof establishing or tending to establish Lundy's lane as a public highway, by formal laying out, dedication or prescription, and so the trial judge must have concluded.

This leaves remaining the ground upon which the direction of verdict was denied and the theory upon which the matter was submitted to the jury, that is to say, that the appellant had created a situation and condition from which it appeared that this crossing was a public highway.

The basic case relied upon is *Black* v. *Central Railroad Co.,* 85 *N. J. L.* 197.

But we can find nothing in the proofs to bring it within the principle there laid down.

The entire proof is that at the point in question there were four railroad tracks; that the roadway was entirely unimproved, a very muddy dirt road, the mud being four to five inches deep within five feet of the tracks; that there was

planking between the tracks (evidently rails) the tracks (rails) being two inches higher than the planking and on the outside of the tracks the roadway being four to five inches below the rails and that the planking was in bad condition.

There is not a scintilla of proof who placed the planking between the rails or who, if anyone, made repairs thereto. Thus the case is not brought within *New York and Long Branch Railroad Co.* v. *Drummond*, 46 *N. J. L.* 644..

We fail to find that the plaintiff established its case under any of the foregoing theories and, therefore, there should have been a direction of verdict in favor of the defendant.

2. That there was error in admitting in evidence *Exhibits P-4* and *P-6*.

These are two exhibits referred to and analyzed under point one.

We think it was error to admit them because they were not competent proof of the matter for which they were offered, namely, that they established or tended to establish that Lundy's lane was a public highway.

3. Error in admitting in evidence *Exhibit P-5*.

This was an ordinance of the city of Jersey City purporting to regulate the rate of speed at which railroad trains might be impelled or driven across any street or avenue at grade and limiting such speed to six miles per hour.

It is argued that its admission was erroneous because the ordinance was superseded by subsequent legislation. *Atlantic City Railroad Co.* v. *Pleasantville*, 99 *N. J. L.* 328; *affirmed*, 100 *Id.* 394; *Erie Railroad Co.* v. *Board*, 107 *Id.* 409; *Harrison* v. *United, &c., Railroad*, 101 *N. J. Eq.* 427.

Conceding this to be so the objection did not go in this direction, and while the trial judge charged the jury that they might consider this ordinance no exception was taken thereto and, therefore, the matter is not before us.

4. Errors in the charge of the court.

The first of these is the instruction respecting the creation by appellant or the permitting by it of the creation of such condition respecting the crossing as to warrant the public in

assuming it to be a public highway. This in substance has been disposed of under point one and may here be disposed as being an erroneous instruction because there were no facts upon which to support the principle contained in it.

The second portion of the charge complained of goes to this same matter and may be disposed of in the same manner and for the same reasons just expressed.

The judgment under review is reversed.